**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DRM SALES & SUPPLY, LLC** | § | **Case No. 16-70028-rbk-11** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DRM RENTAL PROPERTIES, LLC** | § | **Case No. 16-70029-rbk-11** |
| | § | |
| Debtor. | § | **Joint Administration Pending** |

**DEBTORS' JOINT EMERGENCY MOTION FOR AUTHORITY
TO USE CASH COLLATERAL**

TO THE HONORABLE RONALD B. KING, U.S. Bankruptcy Judge:

NOW COME, DRM SALES & SUPPLY, LLC, along with DRM RENTAL PROPERTIES, LLC, the Debtors in the above-referenced bankruptcy proceedings, and pursuant to Bankruptcy Rule 4001(b) file this Debtors' Joint Emergency Motion for Authority to Use Cash Collateral ("Motion").  In support, the Debtors would show:

*Summary of Relief Requested*

This Motion seeks interim use of cash collateral for a period of thirty (30) days to avoid immediate and irreparable harm to the bankruptcy estates of the two Debtors, and also requests the Court to set a final hearing on the use of cash collateral.

Community National Bank, Midland, Texas, holds a security interest in the cash, accounts receivable, inventory and other personal property of DRM Sales and Supply, LLC to secure the repayment of a promissory note having an outstanding balance of an estimated $11.8

million. West Texas National Bank, Midland, Texas, owns a portion of the promissory note as a participant in the lending relationship, and, therefore, also has an interest in the cash collateral.

Community National Bank, Midland, Texas, holds a deed of trust against the real property of DRM Rental Properties, LLC to secure the repayment of a promissory note in an estimated amount of $4.2 million. West Texas National Bank, Midland, Texas, owns a portion of the notes outstanding as a participant in the lending relationship, and, therefore may also have an interest in the cash collateral.

The cash collateral sought to be used in accordance with the requests set out in this Motion will be used to pay pre-petition and post-petition wages of the employees of DRM Sales and Supply, LLC, as well as the normal day-to-day expenses of its operations such as fuel, utilities, office expenditures, management fees and rent. It also provides for the purchase of inventory in the form of pipe and other supplies used in the oil and gas industry for the exploration, development and production of oil and natural gas.

The Motion proposes to grant Community National Bank a replacement lien in the assets of DRM Sales and Supply, LLC of equal priority as its pre-petition liens.

### The DRM Entities

1.      The Debtor, DRM Sales & Supply, LLC, is a Texas limited liability company which owns an oil and gas supply business located in Midland, Midland County, Texas. It is one of four major companies owned and operated by Donald R. Meek.

2.      DRM Sales primarily buys and distributes steel casing pipe, tubing and other such supplies that are used in the drilling operations of oil rigs engaged in the exploration for oil and gas throughout the United States.

3.      The second DRM entity, which is one of the debtors in these bankruptcy

proceedings, is a limited liability company named, DRM Rental Properties, LLC (DRM Rental"). This company owns a large office building, warehouse, truck shop, and storage yard facility located at 7100 West Interstate 20 in Midland County, Texas. (DRM Sales and DRM Rental are collectively referred to herein as "Debtors").

4.      The third entity owned by Donald R. Meek is a Texas limited liability company known as DRM Transportation Services, LLC, which owns trucks and other equipment associated with the transport of oil and gas pipe to the customers of DRM Sales. The three DRM companies, DRM Sales, DRM Rental Properties and DRM Transportation are all managed by another company known as DRM Management, LLC ("DRM Management"). All four companies operate pursuant to a cash management arrangement conducted by DRM Management.

5.      The Debtor, DRM Sales, along with its sister company, DRM Rental, filed for relief under Chapter 11 of the United States Bankruptcy Code on February 26, 2016.  The Debtors, therefore, have the rights, powers and duties of a Debtor in Possession and continue to hold possession of and desire to maintain and operate their combined oil and gas supply businesses  pursuant to the authority of the Bankruptcy Code set out in §§1107 and 1108.

### DRM Indebtedness Owing to Community National Bank

6.      The Debtors obtained pre-petition financing from Community National Bank, Midland, Texas ("Community Bank"). Community Bank holds a note issued by DRM Sales in the approximate amount of $11,500,000.00 (the "DRM Sales Note"). The DRM Sales Note is secured by DRM Sales inventory, cash, and accounts receivable. DRM Sales currently reflects on its books and records inventory (based on an average cost method) valued at $7,010,150, cash in the approximate sum of $1,099,560, and accounts receivable from customers totaling an

estimated $5,175,607. Thus, Community Bank holds a security interest against collateral valued as reflected on the books of DRM Sales of $13.3 million against indebtedness totaling approximately $11.5 million. The DRM Sales Note is in default based upon its violation of the borrowing base requirements set forth in the Community Bank loan documents, and DRM Sales has also failed to make several monthly payments in accordance with the terms of the note.

7. DRM Rental is the owner of the building the DRM Entities operate out of in Midland, Texas. DRM Sales, DRM Transportation, and DRM Management each have rental obligations to DRM Rental for use of the building. Community Bank holds a note secured by the building in the approximate amount of $4,044,751.69 ("DRM Rental Building Note"). DRM Rental remains current on the payments due on the DRM Rental Building Note. A recent appraisal of the building values it at $5,600,000.00. Community Bank also holds a note against DRM Rental in the approximate sum of $88,819.71 ("DRM Rental Equipment Note"). This note relates to equipment purchased and installed during the construction of the building. DRM Rental remains current on the payments due on the DRM Rental Equipment Note.

8. Community Bank holds a debt owed by DRM Transportation in the approximate amount of $90,902.91 (the "DRM Transportation Debt"). The DRM Transportation Debt arises out of a financing or factoring agreement between DRM Transportation and Community Bank. All money advanced by Community Bank for the DRM Transportation Debt is secured by the accounts receivable sold and assigned to Community Bank. DRM Transportation believes it is current with any payments on the DRM Transportation Debt. DRM Transportation believes this debt will resolve itself upon payment by the account debtors of the purchased accounts receivable. DRM Transportation believes Community Bank to be fully secured on the DRM Transportation Debt. DRM Transportation has currently shut down its operations other than

delivering pipe sold by DRM Sales to its customers. DRM Transportation will no longer be factoring accounts receivable with Community Bank. While certain of its operations have ceased, DRM Transportation will maintain the trucks and trailers it owns to assure that DRM Sales can deliver its pipe to its customers. Therefore, DRM Transportation will have some continued overhead expenses that it must be able to cover.

9.      Upon knowledge and belief, Community Bank claims all the assets of the four companies (collectively referred to herein as the "DRM Entities") are cross-collateralized to secure the repayment of the notes outstanding to Community Bank, but the loan documents made available to the Debtors do not seem to support such an assertion.

### *Background Facts Leading to Filing for Chapter 11 Relief*

10.     The Debtors would show the Court that the oil and gas industry throughout the United States of America, and particularly in the Permian Basin area of West Texas, is under significant economic distress due to the precipitous decline in crude oil prices which has occurred over the past 18 months. Crude oil prices that had risen as high as $100 per barrel over the past eight years started dropping in October of 2014 and now have dropped below $30 per barrel. During the boom period demand for casing pipe, tubing and other supplies sky-rocketed. This created significant growth in the volume of sales and profits of the DRM Entities. However, the rapid decline in crude oil prices has also caused a decrease in the volume of oilfield pipe sold as well as the price of all products sold by DRM Sales.

11.     The decrease in volume as well as the prices for the products DRM Sales sold to customers caused the company to be out of compliance with the borrowing base requirements stipulated in the notes and collateral documents in place between the Debtor and Community Bank. In early February of 2016 Community Bank, without any prior notice to the DRM Entities,

declared the DRM Sales Note in default and wrote letters to all of its customers instructing them to send all payments for outstanding invoices to the bank's counsel. The letter declaring the default was not received by officials of DRM because the correspondence was sent to the wrong address. Officials of DRM finally received the notice of default from Community Bank after being told by its customers that the bank was instructing them to make the payments to the bank. Donald R. Meek as the owner of DRM Entities immediately requested a meeting to propose a restructuring of the indebtedness and a plan for continued operations during the distressed economic period. A meeting was held with officials of Community Bank and West Texas National Bank, Midland, Texas (West Texas National Bank owns a participation in certain of the Community Bank notes), on February 24, 2016, at the offices of its counsel. At the meeting, representatives of the DRM Entities discussed a written proposal sent by the counsel for the DRM Entities to counsel for Community Bank. The proposal contained a plan for continued operations and servicing the Community Bank indebtedness. At the meeting on February 24, counsel for the DRM Entities sought to answer questions about the finances, assets and liabilities of the DRM Entities. However, on the day following the meeting, Community Bank without so much as a call to counsel for the DRM Entities offset all of the bank accounts, began returning checks unpaid, and then on the evening of February 25, 2016, sent a security service to the DRM facility in Midland, Texas, and attempted to lock-out all employees, chain the gates and post a security guard on the premises. These actions of the bank resulted in the rushed filing of bankruptcy petitions for DRM Sales and DRM Rental early on the morning of February 26, 2016.

### *Current Status of DRM Operations and Budgets for Cash Collateral*

12. The Debtor, DRM Sales, currently has in its possession approximately $1.1

million of cash collateral in the form of deposits in its depository accounts from collections of outstanding accounts receivable owing from its customers. DRM Sales has an immediate need to use the cash collateral to pay its employees, pay critical vendors, arrange security deposits for its utilities, purchase fuel for its vehicles, and pay for other supplies vital to its operations.

13.     In addition to the deposits from the collection of the accounts receivable referenced above, the DRM Sales has outstanding accounts receivable in the sum of $5.18 million, the majority of which are less than ninety (90) days old. Management of DRM Sales believes at least $3.5 million is readily collectable.

14.     Management of DRM Sales has prepared a budget relating to its proposed expenditures over the next sixty (60) days which reflects the sources and uses of the funds. The budget is attached hereto and incorporated herein as Exhibit "A." Management of DRM Sales and DRM Rental believe these cash flow projections, as well as the collection of outstanding accounts receivable, will provide the DRM Entities the ability to propose a confirmable plan to restructure the outstanding balances owed on the DRM Sales Note, the DRM Transportation Note, and the DRM Rental Building and Equipment Notes. As shown, the cash flow projections use historical sales and expense data to project future expenses and revenues. Based on the cash flow projections, and the provisions of the automatic stay which prevents Community Bank from taking actions relating to the collection and enforcement of the DRM Sales Note, the DRM Entities project that net income after all expenses will be $63,212.95. By continuing to reduce its expenses, the DRM Entities project that net income for April 2016 will be $78,933.56.

15.     Based upon the budget, DRM Sales proposes to continue to operate its business on as much of a cash basis as possible going forward. DRM Sales would request the current use of the $1.1 million in its depository, along with proceeds from the collection of its accounts

receivable, to satisfy the claims of essential trade creditors, to purchase inventory required to fulfill current orders, to pay pre-petition wage claims, to pay certain critical vendors, and to general cover normal operating expenses over the next four weeks until new money comes in, and to use to cover administrative expenses in the form of professional fees and expenses to its bankruptcy counsel. The DRM Entities will continue to cut expenses where possible; however, h DRM Sales and DRM Rental request permission of the Court for DRM Sales to continue to make monthly lease payments to DRM Rental so that the note payments due on the DRM Rental Building Note and the DRM Rental Equipment Note can be timely made.

16.     As reflected in the budget, DRM Sales has already made significant adjustments to lower its expenses and to improve its cash flow. DRM Sales has also reduced its work force to fifteen (15) total employees. As stated, DRM Transportation has ceased operations other than the delivery of pipe to DRM Sales customers. DRM Rental has few operating expenses except for those necessary to maintain the building and storage yard in Midland, Texas. DRM Rentals proposes that it continue to receive monthly rent payments from DRM Sales and DRM Transportation and then makes the monthly installment payments to Community Bank. These plans for future operations for the three entities should free up cash flow to support DRM Sales and DRM Rental proposing plans of reorganization within the exclusivity period.

### *Need for Consideration of Motion on an Emergency Basis*

17.     The Community Bank debt is approximately $16.5 million while total value of the collateral as reflected by the books of the DRM Entities along with the appraised value of the DRM Rental building and yard facility is in the area of $18.1 million. Therefore, on a strict balance sheet basis it would appear Community Bank has an equity cushion, and would not, therefore require adequate protection. However, the Debtor believes these values may be

significantly inflated in light of the current economic conditions in the Permian Basin. In the event the Debtors are not allowed the use of cash collateral to continue their respective business operations they will undoubtedly suffer immediate and irreparable harm as the companies will have no alternative but to close their doors, discontinue their operations and liquidate their assets. The Debtors believe an accurate reflection of the current status of Community Bank's collateral compared to its indebtedness in an immediate liquidation scenario is reflected in the following chart:

| Loan No. | Borrower | Loan Balance | Description of Collateral | Estimated Value of Collateral | Characterization of Claim |
|---|---|---|---|---|---|
| 5002264 | DRM Sales | $11,814,740.62 | Inventory and cash/accounts receivable | $6,500,000 | Secured claim - $6,500,000; unsecured claim - $5,314,740.62 |
| 52090 | DRM Transportation | $90,902.91 | Purchased Accounts | $90,902.91 | Secured claim - $90,902.91 |
| 5008732 & 5008727 | DRM Rental | 4,133,571.30 | Building and equipment affixed to building | $3,000,000 | Secured claim - $3,000,000; unsecured claim - $1,133,571.30 |

18.     As is reflected in the chart above, an immediate liquidation under the current economic conditions would be a disaster for the bankruptcy estates and their creditors. Based on the foregoing, Community Bank would appear to only be secured in the approximate amount of $9,500,000 and would have an unsecured deficiency balance in the approximate amount of $6,539,214.93. DRM Sales has unsecured trade indebtedness in the approximate amount of $7,700,000. To pile another $6.5 million into the unsecured classification would mean that none of these vendors would be paid for the products they have supplied DRM Sales – potentially resulting in an avalanche of bankruptcies in the Permian Basin and across the State of Texas.

19.     Management of the Debtors believe that most of the trade creditors will be willing to work with DRM Sales to continue to supply goods on either a C.O.D. or short term credit basis. Furthermore, because several of DRM Sales trade creditors are essential, DRM Sales requests authority to make payments on these trade creditors' outstanding indebtedness so they will agree to continue to do business with DRM Sales. Once again, without the use of the cash collateral the estates will suffer immediate and irreparable harm, by forcing them to discontinue all operations, terminate the employment of their employees and submit to an immediate liquidation of their assets.

20.     There is presently an immediate need for the use of cash collateral in the operation of the Debtors' businesses, and they request interim use of cash collateral for a period of thirty (30) days until a final hearing on the Debtors' proposed use of cash collateral can be scheduled, appropriately noticed to all creditors and parties in interest, and held. The Debtors have cash needs for the purchase of fuel, payment of pre-petition wages to its employees, and pay certain critical vendors. The expenses that must be paid within the next thirty (30) days are reflected on the attached Exhibit "A." Furthermore, upon final hearing the Debtor will request a carve out for the payment of professional fees and expenses in an amount to be determined by the Debtors after their schedules and statement of financial affairs are filed.

21.     The failure to have use of the cash collateral for the purposes set forth above will cause immediate and irreparable harm to the assets of the Debtors and will result in severe damage and diminution to the value of their assets. For these reasons, the Debtors request an emergency hearing on shortened notice of two (2) days' notice on their motion for use of cash collateral.

22.     The Debtors hereby request an emergency preliminary hearing on this Motion.

By separate motion the Debtors will request shortened notice to affected creditors and parties in interest so the Court may consider their request for interim use of cash collateral. The Debtors request authority to use cash collateral on an interim basis consistent with the attached cash flow projections shown on Exhibit "A."  The Debtors suggests that to the extent replacement liens are necessary and appropriate to provide adequate protection that they be granted to Community Bank as an asserted secured creditor in the same nature, extent and priority post-petition as they existed pre-petition and that the Court set a hearing to consider the Debtors' continued use of cash collateral and to grant adequate protection to the secured creditor in a manner consistent with the requirements of the Bankruptcy Code.

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that the Court set an emergency hearing on two (2) days' notice and determine that such notice and opportunity for hearing is reasonable under the circumstances, and upon hearing of the Motion grant Debtors the use of the cash collateral on an interim basis as set forth in this Motion, and that the Court set a hearing on the Debtors' request for continued use of cash collateral beyond the initial 30-day period, and the Court grant such other and further relief, at law or in equity, as the Court may deem necessary and proper.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
 Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553

 /s/ David R. Langston_____
David R. Langston, SBN: 11923800
Brad W. Odell, SBN:  24065839
*Counsel for DRM Sales & Supply, LLC and DRM Rental Properties, LLC*

## **CERTIFICATE OF CONFERENCE**

I certify that on the 29th day of February, I conferred with David H. Smith, counsel for the secured creditor having an interest in the cash collateral sought to be used in this Motion. Counsel for the secured creditor did not get back to me on the secured creditor's position regarding the relief requested in this Motion. While the parties have not been able to reach an agreement, counsel for the Debtors will continue to confer with the secured creditor's counsel to see if an agreement can be reached.

/s/ David R. Langston_____
David R. Langston

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Motion was served on the following parties in interest via ECF on this 29th day of February 2016 and by regular U.S. Mail on the 1st day of March 2016:

1.  U.S. Trustee's Office
    615 E. Houston, Suite 533
    San Antonio, TX 78205

2.  Mr. David H. Smith
    DAVIS, GERALD & CREMER
    400 West Illinois, Suite 1400
    Midland, Texas 79701
    ***Attorneys for Community National Bank***

3.  DRM Rental Properties, LLC
    c/o Donald Meek
    P.O. Box 9236
    Midland, Tx. 79708
    ***Debtor***

4.  All parties receiving notice via ECF in this case.

5.  The 20 Largest Unsecured Creditors as reflected on the attached Exhibit B.

/s/ David R. Langston_____
David R. Langston