IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| In Re: § | | Chapter 11 |
| § | | |
| DRM SUPPLY & SALES, LLC § | | Case No. 16-70028-rbk11 |
| § | | |
|    Debtor. § | | |

| | | |
|---|---|---|
| In Re: § | | Chapter 11 |
| § | | |
| DRM RENTAL PROPERTIES, LLC § | | Case No. 16-70029-rbk11 |
| § | | |
|    Debtor. § | | Joint Administrative Pending |

**COMMUNITY NATIONAL BANK'S RESPONSE TO DEBTORS'
JOINT EMERGENCY MOTIONS FOR AUTHORITY TO USE CASH COLLATERAL
AND TO PAY (A) PREPETITION WAGES, SALARIES AND RELATED ITEMS; (B)
PREPETITION BENEFITS UNDER EMPLOYEE BENEFITS PLAN; (C) DRM
MANAGEMENT CORP'S FEE; and (D) ALL COSTS INCIDENT TO THE
FOREGOING PAYMENTS AND CONTRIBUTIONS**

TO THE HONORABLE JUDGE OF THE COURT:

     Secured Creditor Community National Bank ("CNB") opposes the Debtors' motions to use cash collateral and to pay various pre-petition expenses for the following reasons: (1) the funds being used are the result of fraud on CNB; (2) the proposed use of cash collateral will likely lead to a decrease in the overall value of CNB's collateral; and (3) while it is unclear what is being requested, the proposed uses of cash collateral appear more than is needed on this interim basis.

**I.    Introduction**

     1.    CNB is a secured lender (along with Secured Creditor West Texas National Bank ("WTNB")) as to both Debtors and has filed the requisite proofs of claim for debt totaling

approximately $15,533,329. The debts are secured by broad and general liens, including liens on real estate, equipment, inventory, accounts receivable, and proceeds from the same.

2. Debtors are in the oil field tubulars (a.k.a. "pipe") business. Actual real security in tubulars is a difficult thing. Tubulars are very much a commodity in the oil field. It is common for cash sales to occur and for inventory to disappear even outside bankruptcy. Tubulars are not particularly well serialized (or the numbers can be easily removed or become removed through normal use) and are difficult to track. Tubulars are also not necessarily located on the Debtors' property, but rather at vendor yards, customer yards, or various other third party locations.

3. Debtors began experiencing financial difficulties in November 2014. CNB only became aware of the problems in early 2016, due to mis-reporting by Debtors. When the problems became apparent, CNB instituted a "lock box" arrangement for the accounts receivable. Debtors responded to the lock box by informing its customers to disregard the lock box and pay Debtors directly. As a result, Debtors were able to misdirect the ~$1,100,000 of cash received from customers to a bank account at an unknown financial institution. This misdirected $1,100,000 is the cash Debtors seek to use.

4. The overall debt is further the result of material misstatements made to CNB by Debtor about its inventory. Specifically, as set forth on the attached Declaration of Alan Kaup (the Assistant Vice President of CNB who was assigned to oversee the loans to Debtors), Debtors have admitted that they knowingly submitted fraudulent inventory reports to CNB in order to increase and maintain their loan agreements with CNB. Indeed, Debtors obtained credit line increases shortly before filing bankruptcy based on these false reports.

5. Specifically, the accounting manager for Debtors revealed to CNB, two days before filing bankruptcy, that the Debtors had made a material "mistake" in their inventory system processes. According to Debtors, the Debtors' accounting system crashed and was replaced in November 2014. The new system caused the pipe inventory to be counted both at time of purchase and at time of delivery. The error resulted in double-counting of pipe with a total value of approximately $2,500,000.

6. The overstatement became known to Debtors in April <u>2015</u>, but Debtors did not reveal the overstatement to CNB until two days before filing bankruptcy. Nonetheless, Debtor DRM Sales & Supply, LLC made two requests for increases on the borrowing base based on the inflated inventory, knowing at the time the requests were made that the inventory report was false.

7. CNB relied on these intentionally false reports both to increase and maintain its lending relationship with Debtors.

8. CNB has already filed an adversary proceeding regarding the foregoing fraud. CNB has also filed a state court proceeding against The DRM Management Corporation and the principal of all the DRM entities, Don Meek, on the basis of the their personal guarantees on the debts at issue here and the above-referenced fraud.

## II. Argument and Authorities

9. The misdirection of the accounts receivable funds and the use of fraud to continue and expand the line of credit shortly before bankruptcy is indicative of a debtor that probably should not be allowed to remain in possession, let alone use cash collateral (especially coupled with easy transferability of the inventory). Such use rewards fraudulent and bad faith behavior by Debtors.

**COMMUNITY NATIONAL BANK'S RESPONSE TO DEBTORS' JOINT EMERGENCY MOTIONS FOR AUTHORITY TO USE CASH COLLATERAL AND TO PAY (A) PREPETITION WAGES, SALARIES AND RELATED ITEMS; (B) PREPETITION BENEFITS UNDER EMPLOYEE BENEFITS PLAN; (C) DRM MANAGEMENT CORP'S FEE; and (D) ALL COSTS INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS** **Page 3**

10. The proposed go-forward collateralization of the proceeds will likely lead to a decrease in the overall value of CNB's collateral. While the Debtors' proposed budgets are difficult to read, it appears that Debtors will be continuing to operate at a loss (certainly as to collateral) and CNB's present collateral position will be wasted away over time.

11. The proposed payments further appear to be inflated and, as with regards to the proposed payments to Mr. Meek and The DRM Management Corporation, are subject to their personal guarantees already in litigation for which there is presumably no good faith defense.

### III. Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, Creditor CNB asks the Court: (1) to deny the requested use of cash collateral or, alternatively (2) grant Creditor CNB (in addition to a "go forward" lien) a "superpriority" administrative expense claim with priority over all administrative expenses.

Alternatively (or in addition), CNB asks the Court to: (3) decrease the proposed use of cash collateral to a more reasonable level as determined by the Court and (4) deny all payments to The DRM Management Corporation and Mr. Meek.

        Respectfully submitted,

**DAVIS, GERALD & CREMER, PC**
400 W. Illinois, Suite 1400
Midland, Texas 79701
432-687-0011
Fax: 432-686-51133

By: */s/David H. Smith*
    David H. Smith
    State Bar No. 00794652
    dhsmith@dgclaw.com

**ATTORNEYS FOR COMMUNITY NATIONAL BANK**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on the parties in interest via ECF, email, and/or regular U.S. Mail on this 2nd day of March 2016.

    */s/David H. Smith*
    David H. Smith